# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

|  |  |  |
|---|---|---|
| MEDALLIA INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-03730-TCB |
| | ) | |
| ECHOSPAN, INC., | ) | |
| | ) | |
| *Defendant* | ) | |
| | ) | |

# DEFENDANT ECHOSPAN, INC.'S
# MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
# JUDGMENT ON THE PLEADINGS

## TABLE OF CONTENTS

STATEMENT OF FACTS ................................................................. 3

ARGUMENT ................................................................................. 7

   I.   JUDGMENT ON THE PLEADINGS IS APPROPRIATE FOR DISPOSITION OF CLAIMS OF NON-PATENTABLE SUBJECT MATTER .................................................................................. 7

   II.  THE '639 PATENT CLAIMS PATENT-INELIGIBLE SUBJECT MATTER ................................................................................. 8

      A.  Patent Eligibility Under the *Alice* Two-Part Test. .............................. 8

      B.  The '639 Patent Claims an Abstract Idea. ......................................... 12

      C.  The '639 Patent Does Not Transform its Abstract Idea Into Patent Eligible Subject Matter. ........................................ 20

CONCLUSION ............................................................................ 24

## TABLE OF AUTHORITIES

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
573 U.S. 208 (2014) ..................................................... 2, 9, 10, 11, 12, 21, 24
*Bilski v. Kappos,*
561 U.S. 593 (2010) ......................................................................... 10, 11
*Cannon v. City of W. Palm Beach,*
250 F.3d 1299 (11th Cir. 2001) ............................................................. 7
*CLS Bank Int'l v. Alice Corp. Pty. Ltd.,*
717 F.3d 126 (Fed. Cir. 2013) .............................................................. 9
*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
776 F.3d 1343 (Fed. Cir. 2014) ...................................................... 11, 17
*CyberSource Corp. v. Retail Decisions, Inc.,*
654 F.3d 1366 (Fed. Cir. 2011) ................................................. 11, 16, 24
*Data Engine Techs. LLC v. Google LLC,*
906 F.3d 999 (Fed. Cir. 2018) ............................................................... 8
*DDR Holdings, LLC v. Hotels.com, L.P.,*
773 F.3d 1245 (Fed. Cir. 2014) ........................................................... 11
*Diamond v. Diehr,*
450 U.S. 175 (1981) ............................................................................. 8
*EchoSpan, Inc. v. Medallia, Inc.,*
Case No. 5:22-cv-01732-NC ................................................................. 1
*Enfish LLC v. Microsoft Corp.,*
822 F.3d 1327 (Fed. Cir. 2016) ...................................................... 10, 13
*GoDaddy.com, LLC v. RPost Communs. Ltd.,*
No. CV-14-00126-PHX-JAT, 2016 U.S. Dist. LEXIS 73921 (D. Ariz. June 7,
2016) ................................................................................................ 10
*Gottschalk v. Benson,*
409 U.S. 63 (1972) ............................................................................. 11
*Hagan v. Comm'r, Ga. Dep't of Corr.,*
No. 22-12180, 2023 U.S. App. LEXIS 23060 (11th Cir. Aug. 31, 2023) ........ 8
*Hawk Tech. Sys., LLC, v. Castle Retail, LLC,*
60 F.4th 1349 (Fed. Cir. 2023) ........................................................ 9, 13
*Implicit LLC v. Home Depot U.S.A., Inc.,*
No. 1:22-cv-02476-VMC, 2023 U.S. Dist. LEXIS 98821 (N.D.Ga. June 6,
2023) .................................................................................................. 8
*In re Killian,*
45 F.4th 1373 (Fed. Cir. 2022) ............................................................. 8

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ............................................................ 17, 23
*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .................................................................... 10
*iSentium, LLC v. Bloomberg Fin. L.P.*,
  343 F.Supp.3d 379 (S.D.N.Y. 2018) ............................................................ 19
*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) ...................................................... 9, 12, 21, 24
*Perez v. Wells Fargo N.A.*,
  774 F.3d 1329 (11th Cir. 2014).......................................................................... 7
*Quantum Stream, Inc. v. Charter Communs., Inc.*,
  309 F.Supp.3d 171 (S.D.N.Y. 2018) ............................................................ 16
*Reputation.com, Inc. v. Birdeye, Inc.*,
  No. 21-129-LPS-CJB, 2022 U.S. Dist. LEXIS 16333 (D. Del. Jan. 31, 2022)
  ............................................................................................................................ 19
*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ........................................................ 7, 11, 20
*Trinity Info Media, LLC v. Covalent, Inc.*,
  72 F.4th 1355 (Fed. Cir. 2023) ...................................................................... 7
*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
  793 F.3d 1306 (Fed. Cir. 2015) .................................................................... 16
*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
  100 F.Supp.3d 405 (D.N.J. 2015) ................................................................ 24

## Statutes

35 U.S.C. § 101 *et seq*...................................................................................... 1

## Rules

Fed. R. Civ. P. 10(c) ............................................................................................ 8

Defendant EchoSpan, Inc. ("EchoSpan") respectfully submits this Memorandum of Law in Support of Its Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), and shows the Court as follows:

## INTRODUCTION

Plaintiff Medallia Inc. ("Medallia"), in its bare-bones complaint, attempts to state a claim against EchoSpan for the alleged infringement of U.S. Patent No. 10,963,639 [Doc. 1-1 (the "'639 Patent")].[1] The '639 Patent is generally directed to a method for "analyzing the sentiment of text provided in [user] feedback, which involves determining whether the text . . . expresses positive, negative, neutral, or mixed sentiments." [Doc. 1, ¶ 9]. Because Medallia's infringement claim rests on a patent that seeks to protect an alleged "invention" that is fundamentally ineligible for patent protection under 35 U.S.C. § 101, the Court should enter judgment in EchoSpan's favor on the pleadings under Fed. R. Civ. P. 12(c).

---

[1]    EchoSpan's product differs drastically from that claimed in the '639 Patent and, through discovery, Medallia's claim would be revealed as nothing more than a reactionary attempt to intimidate EchoSpan in connection with EchoSpan's pursuit of a separate case against Medallia. Indeed, in that separate lawsuit, pending in the United States District Court for the Northern District of California, a jury recently found in favor of EchoSpan and against Medallia, awarding EchoSpan $25.7M in compensatory and exemplary damages. *See EchoSpan, Inc. v. Medallia Inc.,* Case No. 5:22-cv-01732-NC (Doc. 389).

1

Section 101 of the Patent Act [35 U.S.C. § 101 *et seq.*] provides patent protection for new and useful processes, machines, manufactures, or compositions of matter, or any new and useful improvement thereof. Abstract ideas, on the other hand, are not eligible for patent protection under Section 101, so as to prevent the monopolization of fundamental concepts and foster further innovation. In *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), the Supreme Court held that software patents that claim nothing more than an abstract idea implemented using known computer technology do not meet the standard for patentability under Section 101 and are thus invalid.

The present case is precisely the type of case to which *Alice* applies. Like the patent in *Alice*, the '639 Patent is directed to nothing more than a generally accepted and well-known abstract idea – namely, the idea that text can be reviewed using models to help gauge the text's general sentiment about a person, place, or thing. This idea is not itself patentable, nor has Medallia invented any new technology to implement this abstract idea or made any incremental advancement in computing technology. Rather, through the '639 Patent, Medallia attempts to monopolize the very idea of sentiment analysis which can be performed by generic, off-the-shelf computers using pre-existing processes (or even performed by humans without the aid of any technology at all). The use of a general-purpose computer and known computing models to implement Medallia's abstract idea fails to supply the inventive concept

necessary to transform this otherwise patent-ineligible idea into something patentable.

Accordingly, the Court should enter judgment on the pleadings that the asserted claims of the '639 Patent are invalid under 35 U.S.C. § 101 because they are directed to an abstract idea that is merely implemented by known, generic computer technology.

## STATEMENT OF FACTS

**Procedural History.** On November 14, 2022, Medallia sued EchoSpan in the U.S. District Court for the Middle District of Florida (Jacksonville Division), alleging that EchoSpan "uses, manufactures, imports, offers for sale and/or sells products . . . that directly infringe one or more claims of the '639 Patent . . . as set forth in the preliminary infringement claim chart attached [to Medallia's complaint]." [Doc. 1, ¶17]. Medallia's Preliminary Infringement Claim Chart, in turn, identifies Claims 1, 4, 5, 6, and 11 of the '639 Patent as the claims asserted by Medallia against EchoSpan.[2] [*See* Doc. 1-2]. On August

---

[2]     The '639 Patent contains 22 claims in total, but Medallia has only asserted these five claims against EchoSpan. Of these asserted claims, one (Claim 1) is an independent claim, while the other 4 are dependent claims that refer to and incorporate Claim 1. [*See* '639 Patent, 9:39-55 (Claim 1), 9:63-10:8 (Claims 4, 5, and 6), and 10:20-21 (Claim 11)]. While all 22 claims of the '639 Patent are directed to subject matter that is not patentable under Section 101 of the Patent Act, EchoSpan limits the instant Motion to the claims asserted in Medallia's Complaint. Should Medallia assert any of the remaining claims of the '639 Patent against EchoSpan, EchoSpan expressly reserves the right to address those claims on at least the same grounds as discussed herein.

21, 2023, the court transferred the case to this Court. [*See* Doc. 23]. On September 5, 2023, EchoSpan filed its Answer, Defenses and Counterclaims, which included an affirmative defense that the claims of the patent are invalid under 35 U.S.C. § 101. [*See* Doc. 35, p. 6].

**<u>The '639 Patent</u>.** The '639 Patent relates generally to sentiment analysis and, more specifically, to "systems and methods for identifying relevantly similar properties of text strings, e.g. their sentiment." ['639 Patent, 1:53-55]. There can be no dispute that the idea of sentiment analysis was not new, but rather an established practice at the time of filing of the application leading to the '639 Patent. As stated in the Background section of the '639 Patent, sentiment analysis is the basic concept of "determining whether the text in feedback [about a person, place, or thing] expresses positive, negative, neutral, or mixed sentiments." [*Id.* at 1:31-33]. While this analysis could be performed by any individual who is able to read the feedback, the '639 Patent suggests that "[m]achine learning techniques can be used on the feedback to determine useful properties of the feedback, e.g. its sentiment." [*Id.* at 1:29-31]. The '639 Patent describes these techniques:

> Such sentiment analysis typically uses a historic data set for training a sentiment analysis model. For example, a sentiment analysis model can be trained using a training data set that has been labeled by a user (e.g., the sentiments have been identified by the user). The trained model learns the associations between various language patterns and the corresponding sentiments in the training data set. The trained model is then used to analyze

subsequent new data sets. When the trained model is used to analyze new data sets similar to the training data set, the model can achieve high accuracy.

[*Id*. at 1:34-44]. Rather than using a single, universally-applicable sentiment analysis model (a "universal sentiment analysis model") to determine the sentiment of text across different business domains (*e.g.*, hotels, restaurants, retail stores, etc.), the method of the '639 Patent instead uses the "universal sentiment analysis model" initially to determine "an initial sentiment judgement" for text and then, a "secondary sentiment analysis model that is custom tailored to a particular client may be used to verify whether the initial sentiment or a secondary sentiment should be used" as the final, determined sentiment of the text input. [*Id*. at 3:50-57].

The patented method involves five steps, listed below in the order in which they appear in Claim 1:

> [1] receiving a text input;
> [2] evaluating the text input with a first model to determine an initial sentiment and confidence thereof;
> [3] if the confidence exceeds, or is equal to, a threshold, using the initial sentiment;
> [4] if the confidence is below the threshold, accessing a list including at least one secondary sentiment and evaluating the text input, in combination with each secondary sentiment, with a relevantly similar analysis model to generate a relevantly similar confidence (RSC) score corresponding to each secondary sentiment included in the list, wherein an evaluation of each generated RSC score determines whether to use the initial sentiment or a secondary sentiment as a resolved sentiment; and
> [5] displaying the resolved sentiment associated with the text string.

[*Id.* at 9:40-55]. Claims 4, 5, and 6 claim the method described in Claim 1, each with additional limitations relating to which sentiment (initial, secondary, or tertiary) is used as the "resolved sentiment," based on the relevantly similar confidence (RSC) score. [*Id.* at 9:63-10:8 and 10:20-21]. Specifically:

- Claim 4 adds a limitation to step 4 of Claim 1, such that "when the RSC score is null or less than a threshold, the initial sentiment is set as the resolved sentiment." [*Id.* at 9:63-65].

- Claim 5 adds a limitation to step 4 of Claim 1, such that "when only one RSC score is equal to or greater than a threshold, the secondary sentiment corresponding to that particular RSC score is selected as the resolved sentiment." [*Id.* at 9:66-10:2].

- Claim 6 adds a limitation to step 4 of Claim 1, such that "when multiple RSC scores are equal to or greater than a threshold, the method further comprises using the secondary sentiments corresponding to the RSC scores that are equal to or greater than to threshold [sic] as input factors to select a tertiary sentiment as the resolved sentiment." [*Id.* at 10:3-8].

Finally, Claim 11 adds a limitation to step 1 of Claim 1 to further specify that "the input text is a limited text input." [*Id.* at 10:20-21].

6

The claims of the '639 Patent are thus not directed toward any specific innovations in computer technology, but rather toward a particular method of processing data to determine sentiment using known computing technology.[3]

## ARGUMENT

## I.   JUDGMENT ON THE PLEADINGS IS APPROPRIATE FOR DISPOSITION OF CLAIMS OF NON-PATENTABLE SUBJECT MATTER.

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). In ruling on a motion for judgment on the pleadings, the Court must "accept as true all material facts alleged in the non-moving party's pleading, and … view those facts in the light most favorable to the non-moving party." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Exhibits attached to a pleading are considered a part of the pleading "for all purposes," Fed. R. Civ.

---

[3]     Because dependent Claims 4, 5, 6, and 11 are directed to the same subject matter as independent Claim 1 and they claim no additional inventive concept that could render them valid in the face of Claim 1's invalidity, the detailed Section 101 analysis set forth *infra* focuses on Claim 1 of the '639 Patent. *See Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023) (invalidating dependent claims along with their parent independent claims, where the dependent claims "merely add trivial variations to the abstract idea . . . that do not change the focus of the asserted claims"); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169 (Fed. Cir. 2018) (holding dependent claims patent ineligible where they merely added features that "simply provide further narrowing of what are still mathematical operations").

P. 10(c), and the Court may therefore consider a complaint's exhibits in deciding a motion for judgment on the pleadings. *See*, *e.g.*, *Hagan v. Comm'r, Ga. Dep't of Corr.*, No. 22-12180, 2023 U.S. App. LEXIS 23060, *16-17 (11th Cir. Aug. 31, 2023).

Patent eligibility under 35 U.S.C. § 101 is a question of law that may implicate underlying issues of fact. *See In re Killian*, 45 F.4th 1373, 1378 (Fed. Cir. 2022). However, "when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law," patent eligibility can be determined on the pleadings under Rule 12(c). *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018); *see also*, *e.g.*, *Implicit LLC v. Home Depot U.S.A., Inc.*, No. 1:22-cv-02476-VMC, 2023 U.S. Dist. LEXIS 98821, *18 (N.D.Ga. June 6, 2023) (granting Rule 12(b)(6) motion to dismiss for Section 101 patent ineligibility). In deciding on patent eligibility, courts should not limit their analysis to only the novel elements of a patent's claims, but instead should look at the claims of the patent as a whole. *See Diamond v. Diehr*, 450 U.S. 175, 188 (1981).

## II.   THE '639 PATENT CLAIMS PATENT-INELIGIBLE SUBJECT MATTER

### A.   Patent Eligibility Under the *Alice* Two-Part Test.

The Supreme Court in *Alice* held that a patent directed to a method of escrow using a computing device for financial transactions was invalid because

35 U.S.C. § 101 was limited to a "new and useful process, machine, manufacture, or composition of matter," and did not extend to "abstract ideas," as these are the basic "building blocks of human ingenuity" from which all innovations are derived. *Alice,* 573 U.S. at 216. As the Federal Circuit opined, "[t]he motivation for the exceptions to eligibility is to prevent the 'monopolization' of the 'basic tools of scientific and technological work,' which 'might tend to impede innovation more than it would tend to promote it.'" *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1297 (Fed. Cir. 2013) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012)).

*Alice* announced a now widely utilized two-part test to determine whether a claim like that at issue in this case is eligible for patent protection under Section 101. First, the court must determine whether a claim is directed to a patent-ineligible concept, such as an abstract idea. *Alice*, 573 U.S. at 217. This step requires a court to consider "what the patent asserts to be the focus of the claimed advance over the prior art," focusing on "the language of the asserted claims, considered in light of the specification." *Hawk Tech. Sys., LLC, v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023) (citation omitted). Second, if the patent-in-suit claims an otherwise ineligible concept (such as an abstract idea), the court must next determine whether "additional elements transform the nature of the claim" into something "significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (internal

quotations omitted). The Court characterized this second step as "a search for an inventive concept," which ensures that the claims amount to more than a patent on just the abstract idea. *Id*. at 217 (quotation omitted).

The "term 'abstract idea' embodies the longstanding rule that an idea of itself is not patentable." *GoDaddy.com, LLC v. RPost Communs. Ltd.*, No. CV-14-00126-PHX-JAT, 2016 U.S. Dist. LEXIS 73921, *16 (D. Ariz. June 7, 2016) (internal quotation omitted). "[C]ourts have recognized that it is not always easy to determine the boundary between abstraction and patent-eligible subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1347 (Fed. Cir. 2015). Thus, to determine whether patent claims relate to an abstract idea, both the Federal Circuit and the Supreme Court have "found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

Even prior to *Alice*, the Supreme Court noted that computer-implemented method patents, such as the one at issue in this case, present "special problems in terms of … suspect validity," *Bilski v. Kappos*, 561 U.S. 593, 608 (2010). Cases from the Supreme Court and Federal Circuit provide useful guideposts. For instance, if a patent is directed to a "method of organizing human activity" that has long been "prevalent in our system of commerce," then the patent is directed to an abstract idea. *Alice*, 573 U.S. at

219-20 (quoting *Bilski*, 561 U.S. at 611). "Mathematical algorithms, including those executed on a generic computer," are also abstract ideas. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (citing *Gottschalk v. Benson*, 409 U.S. 63, 64 (1972)). Likewise, "claims focused on collecting information, analyzing it, and displaying certain results of the collection and analysis are directed to an abstract idea." *InvestPic*, 898 F.3d at 1167 (Fed. Cir. 2018) (internal quotation omitted).

It is also clear that patents involving processes that humans can perform without the aid of a computer, including processes that can be done mentally or using pen and paper, are generally directed to abstract ideas. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (noting that "humans have always performed" the functions of collecting, recognizing, and storing data); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) ("[A] method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101."); *Benson*, 409 U.S. at 67 (observing that the conversion of binary numerals can be done mentally using a mathematical table).

In deciding *Alice*, the Supreme Court applied its two-step test and rejected claims relating to a computerized method for mitigating settlement risks that included a "data processing system," a "communications controller,"

11

and a "data storage unit," holding that "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. The Court explained that, because of the ubiquity of computers, a "generic computer implementation is not generally the sort of 'additional feature' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id*. at 223-24 (quoting *Mayo*, 566 U.S. at 77).

### B.    The '639 Patent Claims an Abstract Idea.

By Plaintiff's own admission, the '639 Patent is directed to nothing more than "sentiment analysis" which involves "determining whether the text in feedback expresses positive, negative, neutral, or mixed sentiments." [Doc.1, ¶ 9]. Determining sentiment from text using multiple known computing models is an abstract idea, especially in the vague manner disclosed in the '639 Patent. The methods claimed in the '639 Patent can readily be practiced by a human without computer assistance or on a generic computer. Finally, and perhaps most tellingly, other courts confronted with similar sentiment analysis claims have held them to be invalid under Section 101 and *Alice*.

To determine whether the '639 Patent is directed to an abstract idea, the Court should first look to "what the patent asserts to be the focus of the claimed advance over the prior art," focusing on "the language of the asserted claims, considered in light of the specification." *Hawk Tech. Sys., LLC*, 60 F.4th at

1358. This inquiry "applies a stage-one filter to claims, considered in light of the specification, based on whether their character as a whole is directed to excluded subject matter." *Enfish*, 822 F.3d at 1335 (quotation omitted).

Here, the alleged novelty of Claim 1 of the '639 Patent lies in its use of a client- or industry-specific "relatively similar analysis (RSA) model" to determine sentiment:

> Determining cross data set applicability for [a universal sentiment analysis model] . . . relies on [an] administrator[]'s manual intervention. This process can be tedious and time-consuming, and may not be scalable. Moreover, even if [the model] produces results for different data sets that are similar to expected sentiments, such results may not be relevant.
>
> Embodiments discussed herein use a relatively similar analysis (RSA) model [] to eliminate the need for ensuring that [the] universal sentiment model [] is applicable across different data sets and to ensure that the results are relevant to each client.

['639 Patent, 5:12-23]. Use of this relatively similar analysis model is reflected in the fourth step of Claim 1 of the patent, which claims:

> [I]f the confidence is below the threshold, accessing a list including at least one secondary sentiment and evaluating the text input, in combination with each secondary sentiment, ***with a relevantly similar analysis model*** to generate a relevantly similar confidence (RSC) score corresponding to each secondary sentiment included in the list, wherein an evaluation of each generated RSC score determines whether to use the initial sentiment or a secondary sentiment as a resolved sentiment . . .

[*Id*. at 9:45-53] (emphasis added). The patent specification mentions the RSC score that is generated by the relatively similar analysis model only three times, all in the same paragraph:

13

> [Relevantly similar analysis] model 220 can generate secondary judgement sentiment 222 and ***relevantly similar confidence score 224*** based on text input 240. As discussed above, RSA model 220 can leverage client specific correction list 250 to yield secondary judgement sentiment 222. Initial judgement sentiment 212, initial judgment confidence score 214, secondary judgement sentiment 222, and ***relevantly similar confidence score 224*** may be provided to resolution module 230. Resolution module 230 can determine whether initial judgement sentiment 212, secondary judgement sentiment 222, or a tertiary judgement sentiment (not shown) should be selected as resolved sentiment 260. Resolution 230 module can make the determination based on initial judgment confidence score 214 and ***relevantly similar confidence score 224***.

[*Id*. at 6:28-41] (emphasis added). Consistent with the abstract nature of the asserted claims, in its three brief mentions, the '639 Patent does not teach what a "relevantly similar confidence score" is, nor does it provide any examples or methods for how to calculate such a score.

Nevertheless, the alleged novelty of the asserted claims lies in this use of a "client specific correction list" of client-generated sentiments that are specific to the client's particular business domain to yield a secondary sentiment. [*Id*.] This "client specific correction list" is fed into a relatively similar analysis model that generates a relevantly similar confidence score for each sentiment in the list, which is then compared to the initial sentiment. [*Id*.] Claim 1's limitation relating to a "list including at least one secondary sentiment" therefore appears to refer to the "Client Specific Correction List [250]," shown in Figure 2 of the '639 Patent:



FIG. 2

[*Id.* at Fig. 2].[4] If the system's initial sentiment judgment has a confidence score below a certain threshold (indicating that the initial sentiment judgment is unreliable), the relevantly similar analysis model is utilized. [*Id.* at 9:45-53]. That model uses the Client Specific Correction List to arrive at a secondary sentiment judgment for the initial text input. [*Id.* at Fig. 2].

The "universal sentiment analysis model" and the "relevantly similar analysis model" are generic computing models (*i.e.*, software). Claim 1 does not limit these models to any particular type of model, nor does the specification

---

[4]      Figure 2 generally shows the "sentiment analysis system" that runs on the "analysis server" [146] of Figure 1 of the '639 Patent. [*Id.* at 6:12-14].

describe exemplary types of models.[5] Thus, as drafted, the limitations of Claim 1 define a process that, but for the recitation of a "computer-implemented method" in the claim's preamble, are broad enough as to cover performance of the claimed limitations in the human mind.

Courts have "often held processes that can be accomplished mentally or within the human mind as drawing upon abstract ideas. That is because the 'application of only human intelligence to the solution of practical problems is no more than a claim to a fundamental principle.'" *Quantum Stream, Inc. v. Charter Communs., Inc.*, 309 F.Supp.3d 171, 183 (S.D.N.Y. 2018) (quoting *CyberSource*, 654 F.3d at 1371-72). Further, the Federal Circuit frequently upholds the invalidity of patents directed to methods that could be performed mentally or with pen and paper without use of a computer. *See, e.g., Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1335 (Fed. Cir. 2015) ("Courts have examined claims that required the use of a computer and still found that

---

[5] Nor does the patent specification of the '639 Patent disclose any algorithms or flowcharts describing operation of the patent's universal sentiment analysis model or relevantly similar analysis model (*i.e.*, how the models generate their sentiment judgments and confidence scores). The '639 Patent effectively discloses only "black box" models – systems that produce data without revealing any information about their internal workings. They are trained with data such that, when provided with an input, they generate an output. That is all we know. Because of its utter lack of detail, the '639 Patent merely claims a process whereby text is evaluated using two different models and a best output is somehow determined and displayed using a "relevantly similar confidence" score.

the underlying, patent-ineligible invention could be performed via pen and paper or in a person's mind."); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) (holding claims directed to budgeting notifications were unpatentable because they "could still be made using a pencil and paper with a simple notification device") (internal quotations omitted); *Content Extraction & Transmission LLC*, 776 F.3d at 1347 (holding claims directed to "data collection, recognition, and storage" are directed to an abstract idea because "humans have always performed these functions").

Here, the abstract idea claimed in the '639 Patent could easily be performed by an individual mentally, or at minimum, without a computer. For example, an individual using pen and paper could analyze a customer review of a hotel first using a set of criteria applicable to customer reviews of all types of establishments (*e.g.*, hotels, restaurants, movie theaters, and so forth), and assign the review a sentiment (positive, negative, neutral, etc.). A score reflecting the individual's confidence in that sentiment could be tallied and increased or decreased on paper by adding one point every time a positive keyword was used, and subtracting one point every time a negative keyword was used, where a positive total number would indicate that the review had an overall positive sentiment, and a negative total number would indicate an overall negative sentiment.

17

The individual might initially determine that the hotel customer review is positive with an 80% degree of confidence. The individual could then re-analyze the same customer review using a second set of criteria specific to hotels, such as a list of hotel-specific keywords, slang terms, tones, use of exclamation marks, or other criteria. For example, this list of sentiments could indicate, from prior experience, that phrases like "the swimming pool was fine," or "I used the gym" should be associated with a neutral sentiment. Indeed, the alleged novelty of the '693 Patent lies in the use of this second list of sentiments, where the sentiments in the list are manually identified by a human. Ultimately, the individual analyzing the text could compare these second sentiments to text within the hotel review, repeat the scoring analysis, and finally, choose which sentiment is the most accurate by comparing the score from the initial analysis with the score from the second analysis. But for the "computer-implemented method" preamble to Claim 1 of the '629 Patent, such analysis would be monopolized by Medallia.

In fact, the abstract concept taught by the '639 Patent – that if an individual is not sufficiently confident in the determination of a certain text's sentiment using a first set of criteria, then a second, differing type of criteria may be used – is merely how human beings evaluate sentiment and make other choices. If a human is not fully confident in her determination of a sentiment expressed, for example, in a news article or customer review, she may use

18

different criteria (*e.g.*, look up a word in a dictionary or otherwise contextualize or revise her understanding of the text) to analyze the same text and either validate her first judgment or determine a different sentiment based on this second set of criteria.

Not surprisingly and for many of the same reasons, other courts evaluating similar patents directed to sentiment analysis have found these types of claims to be invalid and nothing more than abstract ideas. *See, e.g.*, *iSentium, LLC v. Bloomberg Fin. L.P.*, 343 F.Supp.3d 379, 388 (S.D.N.Y. 2018) (invalidating U.S. Patent No. 8,856,056, "claiming "[a] method for calculating sentiment using social media messages for the real-time evaluation of publicly traded assets" and noting that asserted claims were "directed to the abstract idea of collecting statements from social media and identifying opinions through the use of algorithms and databases."); *Reputation.com, Inc. v. Birdeye, Inc.*, No. 21-129-LPS-CJB, 2022 U.S. Dist. LEXIS 16333, *34-40 (D. Del. Jan. 31, 2022) (invalidating patent entitled "Assigning Sentiment to Themes"). In *iSentium*, the New York District Court expressly noted that "[t]he Federal Circuit has held that data analysis is an abstract idea excluded by section 101, even if done with an efficiency and scale not achievable by individuals." *iSentium*, 343 F.Supp.3d at 389.

The *iSentium* decision is highly instructive for multiple reasons. First, the "technologies" at issue in *iSentium* and in the instant case are remarkably

similar – the *iSentium* patent and the '639 Patent both relate to the determination of sentiment via semantic analysis of excerpts of text found on the Internet (*e.g.*, social media, customer reviews, and the like), and "giving that opinion a strength score … based on the use of words in the context of other words." *Id.* at 388. Second, like the patent at issue in *iSentium*, the '639 Patent claims nothing more than performing routine data analysis to determine sentiment. *See id.* at 393 ("This is not a technological solution to technological problem [sic] . . . but a type of data analysis that is ineligible for protection"); *see also InvestPic, LLC*, 898 F.3d at 1167 ("claims focused on collecting information, analyzing it, and displaying certain results of the collection and analysis are directed to an abstract idea.") (internal quotation omitted).

The '639 Patent is therefore clearly directed to an abstract idea that is not patent-eligible absent an inventive concept which, as set forth below, is lacking.

### C.   The '639 Patent Does Not Transform its Abstract Idea Into Patent Eligible Subject Matter.

Under the second part of the *Alice* analysis, to be eligible for patent protection, claims directed to an abstract idea must recite additional elements such that they "transform the nature of the claim" into something "*significantly more* than a patent upon the ineligible concept itself." *Alice*, 573

U.S. at 217-18 (citing *Mayo*, 566 U.S. at 72) (emphasis added). The claims of the '639 Patent fail to meet this standard, as they do not recite anything more than the abstract idea itself, coupled with a generic "computer-implemented method" limitation, which fails to transform the claim into something patentable.

It is well-settled that the recitation of generic computer components in patent claims does not transform an abstract idea into a patentable invention. *See id.* at 223-24. In *Alice*, the claims recited "a 'data processing system' with a 'communications controller' and 'data storage unit.'" *Id.* at 226. The Court held that because the computer components were "purely functional and generic," none of the hardware recited by the system claims "offer[ed] a meaningful limitation beyond generally linking the use of the method to a particular technological environment." *Id.* (internal quotation omitted). The Court further cautioned that "wholly generic computer implementation[s are] not generally the sort of 'additional featur[e]' that provides any 'practical assurance that the process is more than a drafting effort designed to monopolize the [abstract idea] itself.'" *Id.* at 223-24 (quoting *Mayo*, 566 U.S. at 77).

Here, it is readily apparent that Claim 1 of the '639 Patent claims only a generic computer implementation – indeed, *it does not recite any computer hardware*. Instead, Claim 1 merely recites in its preamble that the method is

a "computer-implemented method." ['639 Patent, 9:39-40]. Thus, the claims require no more than a general purpose computer.

While Claim 1 recites several abstract computing concepts, such as a "model," "a list," and "displaying the resolved sentiment associated with the text string," these concepts are all generic terms and require no customized or specialized hardware. [*Id.* at 9:39-55]. Claim 1 does not, for example, require a particular type of computing "model." The term "relevantly similar analysis model," is not a term of art, and appears to broadly describe any model that determines a relevant similarity between two things. Thus, Claim 1 represents an attempt to monopolize *all* potential models for determining sentiment or similarity between two things, even those capable of being performed with pen and paper or an ordinary spreadsheet.

With respect to "a list" as recited in Claim 1, the specification explains that this list is merely data accessed from memory, which includes "secondary sentiments," manually compiled by a human. [*Id.* at 5:33-42] ("[E]ach client can update its client specific posting list by populating it with corrected sentiments. This way, each client can benefit from using the data set . . . to obtain an initial judgement sentiment, and based on a confidence of the initial judgement sentiment, [the relatively similar analysis model] can be leveraged to confirm whether initial judgement sentiment is the correct resolved sentiment or whether a secondary sentiment – obtained from the client specific

22

posting list – is the correct resolved sentiment."). Claim 1's limitation of "displaying the resolved sentiment associated with the text string," is no less generic – it does not require a display device or other hardware. [*Id.* at 9:54-55]. Rather, the step of displaying could even be performed by a human writing down the resolved sentiment with pen and paper.

Courts routinely find the recitation of minimal computer limitations fails to satisfy the requirements of *Alice*'s second step. In *Intellectual Ventures*, the claims of the patent-in-suit recited storing user information in a "database" and "causing communication, over a communication medium and to a receiving device." *Intellectual Ventures*, 792 F.3d at 1367. The Federal Circuit held that "it is clear that the claims contain no inventive concept. The recited elements, e.g., a database, a user profile . . . , and a communication medium, are all generic computer elements." *Id.* at 1368.

In the instant case, Medallia's recitations of generic concepts, such as a "model" and "a list" are no more specific than the "database," "communication medium," and "receiving device" claimed in the invalid patent asserted in *Intellectual Ventures*. Likewise, the "computer-implemented method" preamble of Claim 1 of the '639 Patent is nothing more than a generic computer limitation that cannot impart patentability upon the abstract idea of determining sentiment using known computing models.

Not only does Claim 1 fail to recite any specific hardware to rescue its abstract idea, the claimed sequence of steps also imparts nothing innovative that might save the patentability of the claims. "Instead, the claimed sequence of steps comprises only 'conventional steps, specified at a high level of generality,' which is insufficient to supply an 'inventive concept.'" *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F.Supp.3d 405, 416 (D.N.J. 2015) (citing *Alice*, 573 U.S. at 222 (quoting *Mayo*, 566 U.S. at 82, 77, 72)). More specifically, Claim 1's steps of "receiving," "evaluating," "using," "accessing," and "displaying" are nothing more than "insignificant 'data-gathering steps'" that "add nothing of practical significance to the underlying abstract idea." *Id.* (quoting *CyberSource*, 654 F.3d at 1370).

## CONCLUSION

This Court can and should confront the question of whether the '639 Patent is valid under Section 101 of the Patent Act, which can be resolved as a matter of law after consideration of only the claims of the '639 Patent, in light of its specification. When the claims of the '639 Patent are compared to those that other courts have found invalid under the Supreme Court's *Alice* rule, it is evident that Medallia's purported "invention" is nothing more than implementing an abstract idea of performing sentiment analysis using models that are broad enough to be performed by humans mentally or with pen and paper. The "computer-implemented" preamble to the method of Claim 1 adds

24

nothing inventive to the abstract concept. Accordingly, the '639 Patent is invalid under Section 101 and judgement should be entered in EchoSpan's favor pursuant to Fed. R. Civ. P. 12(c).

Respectfully submitted this 13th day of December, 2023.

By:   /s/ Joseph W. Staley

Joseph Staley (Ga. Bar No. 142571)
j.staley@pkhip.com
Andrew Wilson (Ga. Bar No. 737599)
a.wilson@pkhip.com
PERILLA KNOX & HILDEBRANDT LLP
5871 Glenridge Drive
Suite 350
Atlanta, GA 30328-5376
Telephone: (770) 927-7802
Fax: (877) 389-6779

Jonathan R. Chally (Ga. Bar No. 141392)
jchally@cgc-law.com
Jennifer R. Virostko (Ga. Bar No. 959286)
jvirostko@cgc-law.com
COUNCILL, GUNNEMANN & CHALLY, LLC
1201 W. Peachtree Street NW
Suite 2613
Atlanta, GA 30309-3499
Telephone: (404) 407-5250
Facsimile: (404) 600-1624

*Counsel for Defendant EchoSpan, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH LR 5.1</u>

Pursuant to Local Rule 7.1(D), undersigned counsel hereby certifies that the foregoing document has been prepared using one of the font and point selections approved by the Court in LR 5.1(B), NDGa., to wit, Century Schoolbook 13-point.

/s/ Joseph W. Staley
Joseph W. Staley
Georgia Bar No. 142571
PERILLA KNOX & HILDEBRANDT LLP
5871 Glenridge Drive, Suite 350
Atlanta, GA 30328-5376
Telephone: 770-927-7802
Facsimile: (877) 389-6779
j.staley@pkhip.com

*Counsel for Defendant EchoSpan, Inc.*

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| MEDALLIA INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-03730-TCB |
| | ) | |
| ECHOSPAN, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which will send electronic notification of such filing to all counsel of record.

/s/ Joseph W. Staley
Joseph W. Staley
Georgia Bar No. 142571
PERILLA KNOX & HILDEBRANDT LLP
5871 Glenridge Drive, Suite 350
Atlanta, GA 30328-5376
Telephone: 770-927-7802
Facsimile: (877) 389-6779
j.staley@pkhip.com

*Counsel for Defendant EchoSpan, Inc.*

27