IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MEDALLIA INC., <br><br> Plaintiff, <br><br> v. <br><br> ECHOSPAN, INC., <br><br> Defendant. | CIVIL ACTION FILE <br><br> NO. 1:23-cv-3730-TCB |

## **O R D E R**

This case comes before the Court on the motion [46] of Defendant EchoSpan, Inc. for judgment on the pleadings.[1]

**I.   Background**

On November 14, 2022, Plaintiff Medallia Inc. filed this suit against EchoSpan for patent infringement of U.S. Patent No. 10,963,639 ("'639 Patent") in the U.S. District Court for the Middle District of Florida.

---

[1] On January 5, 2024, EchoSpan filed a supplemental brief [53] to address the additional claims that Medallia added in its infringement contentions.

On August 21, 2023, the Florida district court issued an order [23] granting and denying in part EchoSpan's motion to dismiss for improper venue and transferred the case to this Court.

The '639 Patent, titled "Systems and Methods for Identifying Sentiment in Text Strings," "relates to analyzing the sentiment of text provided in feedback, which involves determining whether the text in feedback expresses positive, negative, neutral, or mixed sentiments." [1] ¶¶ 8, 9. Specifically, the 'patent protects a "computer-implemented method" that can receive and evaluate text input using a two-model system. The method first uses a "universal sentiment analysis model" to "process sentiment for data sets across multiple clients or parties in the same or different business domains." [1-1] at 13. But "because the context of the sentiments can be different from one business domain to the next," the method also utilizes a "secondary sentiment analysis model." *Id.* This "secondary sentiment analysis model" is "custom tailored to a particular client . . . to verify whether the initial sentiment or a secondary sentiment should be used." *Id.*

The '639 patent has 22 claims: claims 1 and 22 are independent, and claims 2–21 depend from claim 1.[2]

Claim 1 is a five-step "computer-implemented method," described as follows:

> [1] receiving a text input;
> [2] evaluating the text input with a first model to determine an initial sentiment and confidence thereof;
> [3] if the confidence exceeds, or is equal to, a threshold, using the initial sentiment;
> [4] if the confidence is below the threshold, accessing a list including at least one secondary sentiment and evaluating the text input, in combination with each secondary sentiment, with a relevantly similar analysis model to generate a relevantly similar confidence (RSC) score corresponding to each secondary sentiment included in the list, wherein an evaluation of each generated RSC score determines whether to use the initial sentiment or a secondary sentiment as a resolved sentiment; and
> [5] displaying the resolved sentiment associated with the text string.

[1-1] at 16.

Claim 22 claims a "computer-implemented method" comprising of six steps:

---

[2] Medallia asserts that EchoSpan infringed claims 1–12 and claim 22 of the '639 Patent. EchoSpan analyzed only those claims as representative of all claims of the '639 Patent. The Court is able to treat these claims as representative because Medallia, "the patentee[,] does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) (citations omitted).

3

> [1] training a relevantly similar analysis model that is operative to analyze a text input to determine whether the text input is relevantly similar to other text inputs, the training comprising:
> [2] receiving a text seed;
> [3] retrieving a plurality of text strings determined to be similar to the text seed from a database;
> [4] assessing each of the plurality of text strings to identify which of the plurality of text strings are relevantly similar to the text seed; and [sic]
> [5] using the text strings identified to be relevantly similar as training inputs for the relevantly similar analysis model; and
> [6] using the relevantly similar analysis model to produce second order sentiment results for text inputs when first order sentiment results for the text inputs do not meet confidence criteria.

*Id.* at 17.

## II.   **Legal Standard**

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c). "[A] motion for judgment on the pleadings . . . is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Payne v. Doco Credit Union*, 734 F. App'x 623, 627 (11th Cir. 2018) (per curiam) (quotation omitted). "Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed

facts." *Hart v. Hodges*, 587 F.3d 1288, 1294 n.4 (11th Cir. 2009) (quoting *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). In evaluating a motion for judgment on the pleadings, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the nonmoving party. *See Hawthorne*, 140 F.3d at 1370.

### III.  Discussion

EchoSpan's motion asks this Court to rule that the '639 Patent is directed to patent-ineligible subject matter—an abstract idea—and is thus invalid under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014). Specifically, EchoSpan contends that the patent is directed to the abstract idea of "sentiment analysis using conventional data processing methods" without any "additional inventive concept." [60] at 6.

Medallia responds by contending that the '639 Patent establishes a "method of using a computer system with a two-model configuration that enables efficient sentiment analysis over a range of contexts, users[,] and businesses." [57] at 17. It contends that this "specific

machine learning configuration" improves operation and is a "concrete technological solution[] that [is] patentable subject matter." *Id.* at 19.

Section 101 defines patent-eligible subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quotation omitted). But there is a limit to these exceptions because "too broad an interpretation of this exclusionary principle could eviscerate patent law." *Mayo Collaborative Servs. v. Promethus Labs., Inc.*, 566 U.S. 66, 71 (2012).

In *Alice Corp.*, the Supreme Court established a two-step framework for determining whether claims are patent-eligible. First, the Court must "determine whether the claims at issue are to a patent-ineligible concept." *Alice Corp.*, 573 U.S. at 218. For this step, the Court examines "the claim elements both individually and in combination." *Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1329 (N.D. Ga. 2016) (citations omitted). This step

involves considering claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Specifically, the Court considers "what the patent asserts to be the focus of the claimed advance over the prior art." *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1356 (Fed. Cir. 2023) (quotation omitted). "If the claims are not directed to an abstract idea, the inquiry ends." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016).

However, even if the claims are directed to an abstract idea, the subject matter can still be patentable under *Alice Corp.*'s step two if the claims as a whole and the individual claim elements contain "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18 (quotation omitted). But merely "appending conventional steps, specified at a high level of generality, to the abstract idea is not enough to create a patentable invention." *Mobile Telecomms. Techs.*, 173 F. Supp. 3d at 1329 (quotation omitted).

Simply, *Alice Corp.*'s first step looks at the "focus of the claims [and] their character as a whole," while the second step looks "more precisely at what the claim elements add." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal punctuation and citations omitted).

EchoSpan presents three arguments to support its contention that the '639 Patent protects patent-ineligible subject matter: (1) sentiment analysis using multiple known computing models is an abstract idea; (2) the patented methods can be readily practiced by a human without computer assistance or with a generic computer; and (3) other courts that have addressed similar claims have held them to be ineligible for patent protection.

Medallia concedes that "district court and Federal Circuit cases have found that certain claims related to collecting and analyzing data are directed to an abstract idea." [57] at 25 (citation omitted). But it argues that the '639 Patent is different is because "it recites a method for using a two-part computer system that is tethered to a specific way of implementation." *Id.* at 26. This two-part system allows for finer-tuned analysis, which improves the efficiency of the overall computer

8

system and "realizes improvement in, for example, extra model training time, speed of execution, and accuracy in context-specific text inputs." *Id.* (citations omitted).

In its brief in support of its motion, EchoSpan attempts to paint a picture that the "universal sentiment analysis model" (the first part of the model) and the "relevantly similar analysis model" (the second part of the model) are "generic computing models (*i.e.*, software)." It argues that the patented technology merely attempts to monopolize a method of analysis "that could be performed mentally or with pen and paper without use of a computer." [46-1] at 20 (citations omitted).

Medallia asserts that EchoSpan is implicitly bypassing claim construction proceedings by asking the Court to adopt a meaning that the two models are "generic computing models (*i.e.*, software)." Medallia contends that this interpretation is incorrect. This creates an issue best resolved at claim construction.

As a general matter, "the absence of claim construction and the statutory presumption of validity that exists once a patent [is] issued do not preclude dismissal of this case at the pleadings stage, nor do they preclude a finding of ineligibility." *Implicit LLC v. Home Depot U.S.A.,*

*Inc.*, 676 F. Supp. 3d 1312, 1318 (N.D. Ga. 2023) (alterations omitted) (quoting *WhitServe LLC v. Dropbox, Inc.*, 854 F. App'x 367, 373 (Fed. Cir. 2021)). However, "[i]f there are claim construction disputes at [this] stage, . . . either the court must proceed by adopting the non-moving party's constructions, or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (citations omitted). "[T]he need for claim construction might be apparent just from the claim terms themselves, to arrive at a 'full understanding of the basic character of the claimed subject matter.'" *Id.* at 1128 (quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1273–74 (Fed. Cir. 2012)).

Medallia asserts that the parties dispute the meaning of two critical claim terms—"first model" and "relevantly similar analysis model." Because the meaning is in dispute, Medallia asserts that the Court is unable to get a "full understanding of the basic character of the claimed subject matter." *Bancorp*, 687 F.3d at 1273–74 ("[I]t will ordinarily be desirable—and often necessary—to resolve claim

construction disputes to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.").

EchoSpan contends that the Court can conduct a § 101 analysis without claim construction, and that Medallia's failure to provide its proposed construction of the terms means that Medallia failed to raise a legitimate objection that would prevent the Court from ruling on its motion. According to EchoSpan, claim construction is unnecessary because the '639 Patent does not provide any information to describe how each model operates, so claim construction of the terms would not provide any additional clarity as to whether the '639 Patent relates to an inventive concept.

The Court agrees with Medallia. The purported novelty of the '639 Patent is that it "uses two software modules . . . [that] receiv[e] input text in parallel and provid[e] output confidence scores" with the best score determining whether the first or second model is used. [57] at 30. The Court cannot have a full understanding of the basic character of the claimed subject matter until the meanings of "first model" and "relevantly similar analysis model" are determined.

When there are claim construction disputes at this stage of the proceedings, the Court must either "adopt[] the non-moving party's constructions or . . . resolve the disputes to whatever extent is needed to conduct the § 101 analysis." *Aatrix Software*, 882 F.3d at 1125 (citations omitted). As discussed, Medallia (the non-moving party) did not present a proposed construction. And without the benefit of claim construction, the Court is unable to resolve the dispute to conduct the necessary analysis.[3] As such, the Court will deny EchoSpan's motion for judgment on the pleadings.

Given the complicated and technical nature of the claims and the importance of clarity in the matter of claim construction, pursuant to Federal Rule of Civil Procedure 53(b)(1), the Court hereby notifies the parties of its intent to appoint Andrew Crain as a special master in this case.

---

[3] As of the date of the filings for the briefs on the motion for judgment on the pleading, claim construction had not begun. As such, Medallia did not present its proposed construction of the claim terms at issue, nor the arguments to support those constructions. As of the date of this Order, the parties submitted their joint claim construction statement and both parties have filed their claim construction briefs. No responsive claim construction briefs have been filed, and the *Markman* hearing has not been scheduled.

Barring objections, Mr. Crain will review the parties' joint claim construction statement, their respective claim construction briefs, and their respective replies and issue a report and recommendation ("R&R") on claim construction with the Court. The timelines provided in Rule 53(f) shall govern the Court's review of Mr. Crain's R&R.

The Court will require the parties to each pay half of the fees associated with Mr. Crain's services. Mr. Crain shall preside over this case through claim construction and through the case as it progresses, including any motion for summary judgment.

## IV.  Conclusion

For the foregoing reasons, EchoSpan's motion [46] for judgment on the pleadings is denied without prejudice. In light of this ruling, the parties shall inform the Court, on or before June 28, 2024, of any objections to Mr. Crain's appointment or any relationship with Mr. Crain that would disqualify him pursuant to Rule 53(a)(2). Pursuant to Rule 53(b)(3)(a), Mr. Crain shall file an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. § 455.

IT IS SO ORDERED this 14th day of June, 2024.

_____
Timothy C. Batten, Sr.
Chief United States District Judge